## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ANDREW JONES, derivatively, on behalf of AVIS BUDGET GROUP, INC. | : : : | Case No. |
| Plaintiff, | : : | VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT |
| v. | : : | JURY TRIAL DEMANDED |
| JAGDEEP PAHWA, ANU HARIHARAN, BERNARDO HEES, JOSEPH FERRARO, LYNN KROMINGA, GLENN LURIE, IZELDA MARTINS, AND KARTHIK SARMA | : : : : : : | |
| Defendants, and | : : : | |
| AVIS BUDGET GROUP, INC., | : : | |
| Nominal Defendant. | : : | |

Plaintiff Andrew Jones ("Plaintiff"), by and through his attorneys, hereby submits this Shareholder Derivative Complaint (the "Complaint") for the benefit of Nominal Defendant Avis Budget Group, Inc. ("Avis" or the "Company"), against certain current and former officers and directors of the Company seeking to remedy breaches of fiduciary duties and unjust enrichment, from February 16, 2024 through the present (the "Relevant Period"). Plaintiff makes these allegations upon personal knowledge and the investigation of counsel, which included, among other things, review and analysis of: a) public filings made by Avis and other related parties and

non-parties with the Securities and Exchange Commission ("SEC"); b) press releases and other publications disseminated by certain of the Defendants and other non-parties; c) news articles, shareholder communications and postings on Avis's website; d) publicly available filings in a related securities class action lawsuit captioned *Merriam v. Avis Budget Group, Inc. et al.*, No. 2:25-cv-03332, in the U.S. District Court for the District of New Jersey (the "Securities Action"); and e) other publicly available information concerning Avis and the Individual Defendants (defined below under "Parties.")   Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      Avis purports to be a "leading global provider of mobility solutions through our three most recognized brands, Avis, Budget and Zipcar, as well as several other brands . . ." offering car and truck rentals and sharing.  Through direct ownership and licensing, Avis conducts business in approximately 180 countries throughout the world.  Avis's global rental fleet totals approximately 695,000 vehicles across approximately 10,250 rental locations throughout the world, including approximately 3,800 locations operated by licensees.  In 2024, the Company completed over 38 million vehicle rental transactions worldwide generating total revenues of approximately $11.8 billion.

2

2.     Fleet management, primarily fleet rotation, is critical to Avis's profitability. If rotation is too slow, older models may begin depreciating in value while maintenance costs increase. If rotation is too fast, a company risks prematurely removing vehicles before they have reached the end of their usefulness and retain recoverable value. According to the Company, "[h]ow you buy cars and deliver them into your business and then exit cars out at the proper time at the right place is extremely critical" and, when analyzing buying and selling vehicles, "one of the more important and overlooked aspects is how you rotate your fleet" as it "it allows you to have or maintain a certain age level or mileage level that is both operationally prudent from an efficiency standpoint as it turns out to be in light vehicle costs as well as from a customer acceptance. And we've been doing that."

3.     Following the Covid-19 pandemic, due to a supply shortage, rental companies including Avis were forced to pay higher prices for fleet vehicles than historic norms. In response, Avis slowed its fleet rotation, utilizing vehicles within its rental fleet for a longer period. According to the Company, this strategy "allowed [the Company] to depreciate vehicles across a flatter portion of the residual value curve and manage [its] fleet purchase to an appropriate return on invested capital."

4.     Unbeknownst to investors, however, in the fourth quarter of 2024, Avis executed a "change in strategy to significantly accelerate fleet rotations,"

purportedly designed to "create more certainty in [Avis Budget's] fleet costs and better position [the Company] for sustainable growth for 2025 and beyond."

5.    Indeed, throughout the Relevant Period, Defendants made materially false and misleading statements and/or failed to disclose that: (i) Avis implemented a plan to significantly accelerate its fleet rotation in the fourth quarter of 2024; (ii) the foregoing acceleration shortened the useful life of the majority of the Company's vehicles in its Americas segment, reducing their value; (iii) as a result, Avis would be forced to recognize billions of dollars in impairment charges and incur substantial losses, resulting in a significant negative impact on the Company's financial results; (v) accordingly, Avis's financial and/or business prospects were overstated; and (vi) as a result, Defendants' public statements were materially false and misleading at all relevant times.

6.    On February 11, 2025, Avis issued a press release announcing its financial results for the fourth quarter and full year 2024 ("2/11/25 Press Release"). In the 2/11/25 Press Release, the Company reported a loss of $1.96 billion, or $55.66 per share, for the fourth quarter, compared to a profit of $259 million, or $7.10 per share, for the same period 2023.  Avis attributed these results to "a change in strategy to significantly accelerate fleet rotations, which resulted in shortening the useful life of the majority " causing "a one-time non-cash impairment of $2.3 billion and other non-cash related charges of $180 million."  Also in the 2/11/25 Press Release, the

Company announced that Chief Executive Officer ("CEO"), Defendant Joseph A. Ferraro ("Ferraro"), "will transition from CEO to Board Advisor, effective June 30, 2025" and that "Brian Choi, the Company's Chief Transformation Officer, will take over as CEO, effective July 1, 2025."

7.     Then, during an earnings call on February 12, 2025 ("2/12/25 Earnings Call"), Ferraro disclosed that the Company was aware that its accelerated fleet rotation strategy would result in a significant impairment charge, stating "[n]one of us took that impairment slightly, and we thought long and hard about it."

8.     On this news, Avis's stock price fell 6.82%, or $6.12 per share, to close at $83.59 per share on February 12, 2025.

9.      Avis has suffered and will continue to suffer significant financial and reputational harm because of the wrongs committed by, among others, the Individual Defendants, including the Company's Board of Directors ("Board") and other members of management, as described below.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.  This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367(a).  This action is not a collusive one to confer

jurisdiction on a court of the United States which it would not otherwise have.

11.      This Court has jurisdiction over each Defendant because her or she resides in this district or has sufficient minimum contacts with this district to render the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. The Court has personal jurisdiction over the Nominal Defendant because it is authorized to do business in this state, has consented to service in this state and its principal place of business is within this district.

12.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because one or more of the Defendants either resides, or maintains offices, in this district, a substantial portion of the transactions and wrongs complained of herein, including the Individual Defendants' (defined below) primary participation in the wrongful acts detailed herein and violations of fiduciary duties owed to the Company occurred in this district, and Individual Defendants have received substantial compensation in this district by doing business here and engaging in numerous activities that had an effect in this district.

## PARTIES

13.      Plaintiff is a current shareholder of Avis and has continuously held Avis common stock since January 2024.  Plaintiff is a resident of Pennsylvania.

14.      Nominal Defendant Avis is a New Jersey corporation with its principal executive offices in Rahway, New Jersey.

15.    Defendant, Jagdeep Pahwa ("Pahwa"), Mr. Pahwa has been an Avis director since April 2018 and Chairman since May 2024.  Upon information and belief, Pahwa is a resident of New York.

16.    Defendant, Anu Hariharan ("Hariharan"), has been an Avis director since January 2022 and is a member of the Board's Audit Committee.  Upon information and belief, Hariharan is a resident of California.

17.    Defendant, Bernardo Hees ("Hees"), has been an Avis director since February 2020.  Upon information and belief, Hees is a resident of Illinois.

18.    Defendant Ferraro has been appointed President and Chief Executive Officer ("CEO") for Avis since June 2020, following a six-month period as interim President and CEO.  Upon information and belief, Ferraro is a resident of New Jersey.

19.    Defendant, Lynn Krominga ("Krominga"), has been an Avis director since October 2006.  She is Chair of the Board's Corporate Governance Committee and a member of the Audit Committee and Compensation Committee.  Upon information and belief, Krominga is a resident of Florida.

20.    Defendant, Glenn Lurie ("Lurie"), has been an Avis director since May 2018. He is Chair of the Board's Audit Committee and member of the Compensation Committee.  Upon information and belief, Lurie is a resident of Arizona.

21.     Defendant Izelda Martins ("Martins") has been Executive Vice President and Chief Financial Officer ("CFO") for Avis since January 2024.  Upon information and belief, Martins is a resident of New Jersey.

22.     Defendant, Karthik Sarma ("Sarma"), has been an Avis director since May 2020.  He is Chair of the Board's Compensation Committee and member of the Corporate Governance Committee.  Upon information and belief, Sarma is a resident of New York.

23.     Defendants Pahwa, Hariharan, Hees, Ferraro, Krominga, Lurie, Martins and Sarma are referred to herein as the "Individual Defendants."

24.     Defendants Hariharan, Krominga and Lurie are referred to herein as the "Audit Defendants."

## INDIVIDUAL DEFENDANTS' DUTIES

25.     By reason of their positions as officers, directors, and/or fiduciaries of Avis, and because of their ability to control the business and corporate affairs of Avis, Individual Defendants owed the Company and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage Avis in a fair, just, honest and equitable manner.

26.     Further, Individual Defendants were, and are, required to act in furtherance of the best interests of Avis and its shareholders so as to benefit all

shareholders equally, and not in furtherance of their personal interest and benefit. Each director and officer of the Company owes to Avis and its shareholders the fiduciary duty to exercise good faith and due diligence in the administration of the Company's affairs, and in the use and preservation of its property and assets, as well as the highest obligation of fair dealing.

27.    Because of their positions of control and authority as directors and/or officers of Avis, having knowledge of material non-public information regarding the Company, the Individual Defendants were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.  To discharge their duties, the officers and directors of Avis were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company.  By virtue of such duties the officers and directors of Avis were required to, among other things:

1. Exercise good faith to ensure that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

2. Exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner, and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its

legal authority and disseminating truthful and accurate statements to the investing public; and

3. When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

28.    Avis's Corporate Governance Guidelines state, in relevant part:

The following Corporate Governance Guidelines have been adopted by the Board of Directors (the "Board") of Avis Budget Group, Inc. (the "Issuer") to assist the Board in the exercise of its responsibilities. These Corporate Governance Guidelines reflect the Board's ***commitment to monitor the effectiveness of policy and decision making*** both at the Board and management level, with a view to enhancing long-term stockholder value

***

The ***basic responsibility of the directors is to exercise their business judgment to act in what they reasonably believe to be in the best interests of the Issuer and its stockholders***. . .

29.    The Audit Committee Charter states, in relevant part:

The purpose of the Audit Committee of the Board of Directors (the "Board") of Avis Budget Group, Inc. (the "Company") shall be (a) to assist the Board's ***oversight of (i) the integrity of the Company's financial statements,*** (ii) the Company's independent auditors' qualifications and independence, (iii) the performance of the Company's independent auditors and the Company's internal audit function, (iv) the Company's compliance with legal and regulatory requirements, (v) the Company's systems of ***disclosure controls and procedures, and internal controls over financial reporting***, and (vi) the Company's ***major financial risk exposures*** and the steps

management has undertaken to control such risks, (b) to prepare a report for inclusion in the Company's annual proxy statement, in accordance with applicable law, regulation, and listing standards, and (c) to oversee the ***accounting and financial reporting processes*** of the Company and the audits of the financial statements of the Company.

***

B. Financial Reporting, Accounting Policies, Financial Reporting Process and Internal Controls

- ***Review and discuss the annual audited and quarterly financial statements with the Company's management***, a representative or representatives of its Disclosure Committee and the independent auditor, including the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations." Receive and review any disclosure made to the Committee by the Company's CEO or CFO during the certification process for the Company's annual or quarterly reports filed with the SEC of (a) significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting; and (b) any fraud, whether or not material, that involves management or other employees who have a significant role in the Company's internal controls. Review other relevant reports or financial information submitted by the Company to relevant governmental bodies, or the public.

- ***Review the adequacy and effectiveness of the Company's accounting and internal control policies and procedures on a regular basis*** through inquiry and discussions with the independent auditor, internal auditors and the Company's management.

- ***Review the scope of management's and the independent auditor's reviews of internal control over financial reporting*** and obtain reports on significant findings and recommendations, together with management responses.

- ***Discuss the Company's earnings press releases***, including review of "pro-forma" or "adjusted" non-GAAP information, as well as financial information and earnings guidance provided by

the Company to analysts and rating agencies. This review may be done generally through a discussion of the types of information to be disclosed and type of presentations to be made, and the Audit Committee need not discuss in advance each earnings release or each instance in which the Company may provide earnings guidance.

- ***Review analyses setting forth significant financial reporting issues and judgments made*** in connection with the preparation of the Company's financial statements, including analyses of the effects of alternative GAAP methods on the financial statements.

- Review major issues regarding the Company's significant accounting principles and financial statement presentations and any changes in the selection or application of accounting principles; and any special audit steps adopted in light of material control deficiencies. Consider the impact of acceptable alternative accounting principles that are communicated by the independent auditor, internal auditors or the Company's management.

- Review the effect of regulatory and accounting initiatives, as well as off-balance sheet structures, on the financial statements of the Company.

- Discuss the Company's policies with respect to risk assessment and risk management, including the ***Company's major financial risk exposures*** and the steps management has undertaken to control such risks.

- Make a recommendation to the Board as to the inclusion of the Company's ***audited financial statements in the Company's Annual Report on Form 10-K***.

- ***Prepare the Audit Committee report*** required by the rules of the SEC to be included in the Company's annual proxy statement.

## SUBSTANTIVE ALLEGATIONS

### *Background*

30.    Avis is among the world's largest car and truck rental and sharing companies, with a global rental fleet of approximately 695,000 vehicles across approximately 10,250 rental locations throughout the world.

31.    Fleet management, primarily fleet rotation, is critical to Avis's profitability.  Older models depreciate in value while maintenance costs increase. But, it rotated out of service too fast, Avis risks prematurely removing vehicles before they have reached the end of their usefulness and retain recoverable value. Avis has recognized proper fleet rotation as "extremely critical" represented that, among other things, that it managed its fleet in a manner that was, "both operationally prudent from an efficiency standpoint as it turns out to be in light vehicle costs as well as from a customer acceptance."

32.    Unbeknownst to investors, however, in the fourth quarter of 2024, Avis executed a "change in strategy to significantly accelerate fleet rotations . . ." that resulted in financial disaster for the Company, notwithstanding the positive results Avis management had conditioned the market to expect through the following false and/or misleading statements.

## FALSE AND MISLEADING STATEMENTS

33.    On February 16, 2024, Avis filed its Annual Report on Form 10-K with the SEC for the quarter and year ended December 31, 2023 (the "2023 10-K"). The 2023 10-K stated, in relevant part:

For 2024, we expect our strategy to continue to primarily ***focus on customer experience and costs to strengthen our Company, maximize profitability, and deliver stakeholder value***. To execute our strategy, we expect to continue to leverage marketing and invest in technology and infrastructure to support our vehicle related rentals. ***With respect to costs, we aim to achieve operational excellence and invest strategically to lower costs over the long term***.

34.    Also in the 2023 10-K, the Avis vaguely referenced that "[e]arnings for future periods ***may*** be impacted by impairment charges for goodwill and intangible assets[,]" while downplaying the risk any such event would occur:

> ***We assess goodwill and indefinite-lived intangible assets for impairment each year, or more frequently if circumstances suggest an impairment may have occurred***. We have determined in the past and ***may*** again determine in the future that a significant impairment has occurred in the value of our goodwill. Additionally, ***we have a significant amount of identifiable intangible assets and fixed assets that could also be subject to impairment***. ***If*** we determine that a significant impairment has occurred in the value of our unamortized intangible assets or fixed assets, we ***could*** be required to write off a portion of our assets, which ***could*** adversely affect our consolidated financial condition or our reported results of operations.

35.    Each of the Individual Defendants signed the 2023 10-K pursuant to the requirements of the Securities Exchange Act of 1934 ("Exchange Act"). Defendants Ferraro and Martins also signed certifications attesting that "[t]he information contained in the [2023 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company," pursuant to the Sarbanes-Oxley Act of 2002 ("SOX Certifications").

36.     On May 2, 2024, Avis filed its Quarterly Report on Form 10-Q with the SEC for the quarter ended March 31, 2024 (the "Q1 24 10-Q"). The Q1 24 10-Q materially repeated the Company's strategy as discussed in the 2023 10-K, discussed above.

37.     The Q1 24 10-Q further purported to list "factors and assumptions [that] *could* affect . . . future results," including:

> • a change in our fleet costs, including as a result of a change in the cost of new vehicles, resulting from inflation or otherwise, manufacturer recalls, disruption in the supply of new vehicles, including due to labor actions or otherwise, shortages in semiconductors used in new vehicle production, and/or a change in the price at which we dispose of used vehicles either in the used vehicle market or under repurchase or guaranteed depreciation programs;

***

> • our ability to successfully implement or achieve our business plans and strategies, achieve and maintain cost savings and adapt our business to changes in mobility[.]

38.     Defendants Ferraro and Martins again executed SOX Certifications attesting to the accuracy of the Q1 24 10-Q, which Avis appended thereto in its filing with the SEC.

39.     On August 6, 2024, Avis filed its Quarterly Report on Form 10-Q with the SEC for the quarter ended June 30, 2024 (the "Q2 24 10-Q"). The Q2 24 10-Q materially repeated the Company's strategy set forth in the 2023 10-K, as well as the generic, catch-all warnings contained in the Q1 24 10-K, as discussed above.

40.    Defendants Ferraro and Martins again executed SOX Certifications attesting to the accuracy of the Q2 24 10-Q, which Avis appended thereto in its filing with the SEC.

41.    On October 31, 2024, Avis issued a press release announcing the Company's third quarter 2024 operating results, which stated, in relevant part:

> "We maintained a strong focus on pricing throughout the quarter, prioritizing higher margin business which allowed us to keep our revenue per day stable with the Americas nearly flat," said [Defendant] Ferraro[.] "Vehicle utilization improved by approximately 2 points throughout the Company as we exercised strong fleet discipline. Our U.S. model year 2025 buy is well underway and expected to drive significant savings as these vehicles are rotated into our fleet. Lastly, the holidays look strong, and we believe we are well positioned to capitalize on this demand."

42.    On November 1, 2024, Avis filed its Quarterly Report on Form 10-Q with the SEC for the quarter ended September 30, 2024 (the "Q3 24 10-Q"). The Q3 24 10-Q materially repeated the Company's strategy set forth in the 2023 10-K, as well as the generic, catch-all warnings contained in the Q1 24 10-K, as discussed above.

43.    Defendants Ferraro and Martins again executed SOX Certifications attesting to the accuracy of the Q3 24 10-Q, which Avis appended thereto in its filing with the SEC.

44. Also on November 1, 2024, Avis hosted an earnings call with investors and analysts to discuss the Company's third quarter 2024 results ("Q3 24 Earnings Call"), during which Defendant Ferraro stated, in relevant part:

> So to recap, we reported a strong third quarter with improved vehicle utilization through ongoing fleet discipline. Our model year 2025 buy is largely complete, and we expect to have substantially lower holding costs as these vehicles rotate on our fleet. We'll continue to prioritize high-margin business while balancing volume.

45. Also during the Q3 24 Earnings Call, Defendant Martins stated, in relevant part:

> Our model year 2025 fleet purchase is more affordable. Since we are largely complete with our negotiations, we can say holding costs should improve. We believe over time, our depreciation rate will return to historic levels as we rotate out of the older fleet, which we purchased during the supply-constrained pandemic years and in fleet the model year 2025, which represents a more normalized fleet buy.

46. The above statements were materially false and misleading and/or failed to disclose that: (i) Avis implemented a plan to significantly accelerate its fleet rotation in the fourth quarter of 2024; (ii) the foregoing acceleration shortened the useful life of the majority of the Company's vehicles in its Americas segment, reducing their value; (iii) as a result, Avis would be forced to recognize billions of dollars in impairment charges and incur substantial losses, resulting in a significant negative impact on the Company's financial results; (v) accordingly, Avis's

financial and/or business prospects were overstated; and (vi) as a result, Defendants' public statements were materially false and misleading at all relevant times.

### The Truth is Revealed

47.     On February 11, 2025, Avis issued the 2/11/25 Press Release, which stated, in relevant part:

> We ended 2024 with fourth quarter revenues of $2.7 billion, driven by strong leisure holiday travel. ***Net loss was nearly $2 billion, and Adjusted EBITDA[] was a loss of $101 million***. Full year revenues were $11.8 billion, driven by sustained year-over-year demand. Net loss was $1.8 billion, and Adjusted EBITDA was $628 million.
>
> ***Our net loss and Adjusted EBITDA results reflect a change in strategy to significantly accelerate fleet rotations, which resulted in shortening the useful life of the majority of our vehicles in the Americas segment. The financial impact of this decision was a one-time non-cash impairment of $2.3 billion and other non-cash related charges of $180 million***.

48.     The 2/11/25 Press Release also announced that Defendant Ferraro "will transition from CEO to Board Advisor, effective June 30, 2025" and that "Brian Choi, the Company's Chief Transformation Officer, will take over as CEO, effective July 1, 2025."

49.     On February 12, 2025, Avis hosted the 2/12/25 Earnings Call, during which Defendant Ferraro, when asked "the whole industry is going through its fleet refresh. So, I wonder if you're seeing anything that you think is worth calling out for the competitive landscape in the industry?" responded "I can only comment on what

we're trying to do as far as our fleet rotation. ***None of us took that impairment lightly, and we thought long and hard about it . . .***"

50.    On this news, Avis's stock price fell 6.82%, or $6.12 per share, to close at $83.59 per share on February 12, 2025.

57.    The damages Avis has suffered are a direct and proximate result of the Individual Defendants' breaches of fiduciary duties.  Thus, as a result of the misconduct alleged herein, Individual Defendants are liable to the Company.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

58.    Plaintiff brings this action derivatively in the right and for the benefit of Avis to redress Individual Defendants' breaches of fiduciary duty and other violations of law.

59.    Plaintiff will adequately and fairly represent the interests of Avis and its shareholders in enforcing and prosecuting its rights.

60.    The Board currently consists of the following six directors: Defendants Pahwa, Hariharan, Hees, Krominga, Lurie and Sarma.

61.    Plaintiff has not made any demand on the present Board to institute this action because such a demand would be a futile, wasteful and useless act, for the following reasons.

62.    The Individual Defendants face a substantial likelihood of liability for, among other things, approving or otherwise not preventing Avis's issuance of

statements that, among other things, materially misrepresented the Company's fleet quality and concealed known, imminent impairment charges that would result in significant financial and reputation losses to Avis.

63.    During various times of the Relevant Period, pursuant to the Company's Audit Committee Charter, the three Audit Defendants, Hariharan, Krominga and Lurie (Chair), were responsible for, among other things, reviewing the Company's annual and quarterly financial reports and reviewing the integrity of the Company's internal controls. The Audit Defendants breached their fiduciary duties of due care, loyalty, and good faith, because the Audit Committee, *inter alia*, allowed or permitted the Company to disseminate false and misleading statements in the Company's SEC filings and other disclosures and failed to recognize or correct Avis's internal control failures.   Therefore, the Audit Defendants each face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile.

64.    Moreover, the Audit Defendants failed to maintain the level of oversight required, including that the requirements that the Audit Committee discuss with management and review with the Board, the legal and regulatory requirements applicable to the Company and its subsidiaries and the Company's compliance with such requirements and as appropriate, make recommendations to the Board with respect to the Company's policies and procedures regarding compliance with

applicable laws and regulations.

65.    Therefore, the Audit Defendants each face a substantial likelihood of liability for his or her breach of fiduciary duties and any demand upon the Audit Defendants is futile.

66.    Defendants Hees and Pahwa are not independent and cannot, in good faith, evaluate a demand.  The Board agrees.  As detailed in the Company's March 27, 2025 Proxy Statement filed with the SEC, the Board has concluded that neither Hees nor Pahwa are independent.  Specifically, the March 27, 2025 Proxy Statement explains:

> The Board has determined that Mr. Hees is not independent because he previously served as Executive Chairman of the Board until May 2024 and that Mr. Pahwa is not independent because of his current status as Executive Chairman of the Board and because his brother-in-law is a partner at Deloitte Haskins & Sells LLP, which is affiliated with Deloitte & Touche, LLP, our independent auditor.

67.    Therefore, any demand upon the Board is a futile.

## COUNT I

## Against Individual Defendants for Breach of Fiduciary Duties

68.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

69.    As alleged herein, each of the Individual Defendants violated and breached his or her fiduciary duties of loyalty and good faith by causing or allowing

21

the Company to disseminate to Avis shareholders materially misleading and inaccurate information through, *inter alia*, SEC filings, press releases, conference calls and other public statements and disclosures as detailed herein.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

70.    Also as alleged in detail herein, each of the Individual Defendants had a fiduciary duty to, among other things, exercise good faith to ensure that the Company's public statements were accurate and exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

71.    Individual Defendants, most notably those serving on the Board's Audit Committee, willfully ignored the known and pervasive problems with Avis's internal controls and practices and procedures and failed to make a good faith effort to correct these problems or prevent their recurrence.

72.    As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has suffered significant damages.  Thus, as a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

## COUNT II

**Against Individual Defendants for Unjust Enrichment**

73.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

74.    By their wrongful acts and omissions, Individual Defendants were unjustly enriched at the expense of and to the detriment of Avis.

75.    Plaintiff, as a shareholder and representative of Avis, seeks restitution from Individual Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by Individual Defendants, and each of them, as a result of their wrongful conduct and fiduciary breaches.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.    Declaring that Plaintiff may maintain this derivative action on behalf of Avis and that Plaintiff is a proper and adequate representative of the Company;

B.    Against Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of Individual Defendants' breaches of fiduciary duties;

C.    Directing Avis to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable law and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote

resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

D.     Awarding to Avis restitution from Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits and other compensation obtained by Individual Defendants;

E.     Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs and expenses; and

F.     Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated June 6, 2025                                  Respectfully submitted,


                                                   THE WEISER LAW FIRM, P.C.
                                                    *s/ James M. Ficaro*
                                                   _____
                                                   JAMES M. FICARO (2010-00123)
                                                   jficaro@weiserlawfirm.com

JOHN G. GROSS
jjg@weiserlawfirm.com
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
West Conshohocken, PA 19428
Telephone: (610) 225-2677